**INDEPENDENT UNION OF TRETOLITE CHEMICAL WORKERS, Plaintiff,**

v.

**PETROLITE CORPORATION, Defendant.**

No. 86–1234 C (5).

United States District Court, E.D. Missouri, E.D.

April 16, 1987.

Stuart Oelbaum, St. Louis, Mo., for plaintiff.

William W. Cody, St. Louis, Mo., for defendant.

### ORDER

LIMBAUGH, District Judge.

This case was tried before the Court on February 13, 1987 and involves a determination of whether certain grievances filed by the plaintiff The Independent Union of Tretolite Chemical Workers, against the defendant Petrolite Corporation, are arbitrable pursuant to the terms of the governing collective bargaining agreement between the parties. That agreement is due to expire on April 30, 1987.

### Findings of Fact

The plaintiff in this cause is the certified exclusive bargaining representative for designated employees of defendant. Petrolite is a Delaware corporation registered to do business in Missouri with its principal place of business in Webster Groves, Missouri. The defendant manufactures chemical products for the petroleum industry at its plant in Webster Groves and distributes these products in interstate commerce. Venue for this action is proper under 28 U.S.C. § 1391.

The controversy that is the subject of this case arose in the latter part of 1985 when defendant hired Kelly Services, Inc. to furnish temporary personnel for general cleaning work at its Webster Groves plant. This work was normally performed by employees within the bargaining unit and the evidence revealed that the Kelly employees were paid one dollar per hour more than defendant's employees were paid for this type of work. There is no question that the Kelly employees were not paid directly by Petrolite. The union filed a grievance regarding this situation and alleged that defendant had violated a section in the collective bargaining agreement requiring the employer to pay temporary and part-time employees at specified wage rates set forth in the agreement. Petrolite denied the grievance and ultimately refused arbitration.

In March of 1986 Petrolite again used at least one worker from Kelly Services to perform work (washing bottles) that had traditionally been within the purview of bargaining unit employees. The union again grieved this action and the defendant denied it. When the union attempted to submit the matter to arbitration the defendant refused to participate.

The evidence revealed that the union has been aware of various other personnel and companies that have contracted to perform given services for the defendant. Employees from the Murphy Company, Corrigan Company and Hydroblast Company have been involved in cleaning equipment while other companies have provided grass cutting services and custodial work. The union has made no complaint with regard to these companies.

### Conclusions of Law

The Court has jurisdiction over this cause pursuant to § 301 of the Labor-Management Relations Act, 1947, 29 U.S.C. § 185.[1]

The availability of arbitration as a means of settling a labor-management dispute is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), *AT & T Technologies, Inc., v. Communications Workers of America*, — U.S. —, —, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). This fundamental principle derives its authority, at least in part, from the fact that arbitrators draw their license to resolve disputes from collective bargaining agreements that make provision for arbitration.

---

1. Chapter 29 U.S.C. § 159 has no application to this case since that section provides for NLRB jurisdiction to make bargaining unit clarifications. Defendant's assertion that plaintiff is attempting to have Kelly Services' employees included in the existing bargaining unit is not an accurate characterization of plaintiff's position. In addition, defendant's argument that unit clarification is an issue in this case is not persuasive. This action involves nothing more than a question of contract interpretation, here to determine the arbitrability of a dispute.

*Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974), *AT & T Technologies, supra,* 106 S.Ct. at 1418.

█ Given a collective bargaining agreement that provides for arbitration of at least some disputes, the question becomes whether a particular grievance involves issues within the scope of the arbitration clause. If it does, the parties have a duty to arbitrate the matter. Unless the parties clearly and unmistakably provide otherwise, the question of whether a dispute is subject to arbitration is an issue for judicial determination, *Warrior & Gulf, supra,* 363 U.S. at 582–583, 80 S.Ct. at 1352–1353, and not for the arbitrator.

█ It is equally settled law that the courts have no business weighing the merits of the grievance. *AT & T Technologies, supra,* 106 S.Ct. at 1419. This is not to say that the Court may ignore the merits of the case entirely. Where there is at least a feasible argument in favor of arbitration, however, the Court must direct the dispute to an arbitrator. If it is established that the collective bargaining agreement contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf,* 363 U.S. at 582–583, 80 S.Ct. at 1352–1353. *See also Gateway Coal Co. v. Mine Workers, supra,* 414 U.S. at 377–378, 94 S.Ct. at 636–637. In the absence of any express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. *Warrior & Gulf, supra,* 363 U.S. at 584–585, 80 S.Ct. at 1353–1354. The evidence before this Court that would preclude arbitration is not so forceful.

█ There are several pertinent provisions from the governing collective bargaining agreement that must be examined in order to outline the positions these parties have taken. The recognition clause in the agreement is found in Article I, Section 1:

> Section 1. Scope of the Unit. The Company recognizes the Union as the sole and exclusive bargaining agent for the unit involved in Case No. 14–RC–3324, certified by the National Labor Relations Board on the 13th day of January, 1958 and Case No. 14–RC–8652, certified by the National Labor Relations Board on the 14th day of April, 1978, and described as follows:
>
> > UNIT: All production and maintenance employees at the Employer's 369 Marshal Avenue, Webster Groves, Missouri plant, EXCLUDING watchmen, laboratory and technical employees, office clerical and professional employees, guards and supervisors, as defined in the Act.

Section four of that Article sets forth in general terms the scope of work to be performed by the bargaining unit:

> Section 4. Scope of Work. The term 'Employee' or 'Employees' when or whenever used in this Agreement shall be understood to mean those engaged in the type of work performed within the scope of the aforesaid unit. Provided, however, that:
>
> > A. Company may continue to make work assignments substantially to the extent followed in the past.
> >
> > B. Company may continue to use outside contractors for the furtherance of its business, substantially to the extent followed in the past, (unless resulting in layoffs in the bargaining unit) and when the necessity for contracting out the work has come about because bargaining unit employees could not do the work, or labor costs based on productivity as a result of employee efforts increase to a non-competitive level. This clause does not limit the Company's right to use outside contractors to perform work not within the scope of the unit as defined in Article I, Section 1.

Article V of the agreement pertains to management rights and is the cornerstone of defendant's arguments as to the non-arbitrability (and as to the merits) of this dispute:

### Management Rights

Section 1. Management . Rights. The right to hire, promote, demote, transfer and lay off employees for lack of work, discharge or discipline for cause and to maintain discipline and efficiency of employees, determine the method and manner and place of manufacture, rests solely with the Company, not inconsistent with the other provisions of this agreement.

The rights of the employer (herein called the Company) and the employees (herein called the Union, and its members) shall be respected and the provisions of this Agreement for the orderly settlement of all questions of such rights shall be observed.

All managerial rights and functions not expressly limited by the provisions in this Agreement shall remain exclusively vested in the Company.

Another major substantive provision in the collective bargaining agreement of relevance to this case is found in Article XIII ("Miscellaneous" [provisions]), Section 2, pertaining to "Part-time and temporary employees": [2]

The Company agrees to pay temporary and part-time employees the proper pay rate for work performed which is under the scope of the bargaining unit.

1. A temporary employee is an employee who may work full time, however, may not be employed for a time period exceeding ninety (90) days.

2. A part-time employee is an employee who does not work a full forty (40) hour work week and may be employed temporarily or permanently.

This portion of the collective bargaining agreement and the two previously quoted portions are at the heart of the dispute between plaintiff and defendant with regard to the use of Kelly Services workers. Although the Court has taken great care to avoid making decisions on the substantive merits of the two underlying grievances, these sections are set forth here to illustrate in a somewhat sterile manner the issues upon which the dispute rests: (1) Do the provisions in the collective bargaining agreement pertaining to part-time and temporary employees apply to Kelly Services workers when Petrolite does not pay these workers directly for the work they perform? (2) Do the provisions regarding Petrolite's use of independent contractors limit or prevent the company from using Kelly Services workers in the circumstances involved here? [3]

The grievance procedures set forth in Article VII of the collective bargaining agreement provide, ultimately, for arbitration of disputes "provided the grievance is not involving a subject reserved as a function of management rights." A "grievance", for purposes of arbitration, is a "dispute about the interpretation or application of particular clauses" contained in the agreement. The final words of limitation and definition as to the scope of arbitrable issues are found in Section 5:

The powers of the arbitrator are limited as follows:

A) The arbitrator shall have no power to arbitrate with respect to management rights as described in Article V.

---

**2.** The defendant places emphasis on the non-discrimination clause in the preamble to the collective bargaining agreement as authority that the agreement has no application to employees outside the bargaining unit. This clause provides that "[t]he Company and the Union agree that the provisions of this Agreement shall apply to all employees in the Bargaining Unit without discrimination, and in carrying out their respective obligations under this Agreement, neither party will discriminate against any employee because of such individual's race, color, reli-

gion, age, sex or national origin." This argument will no doubt be considered by an arbitrator in interpreting the terms of the collective bargaining agreement as they might apply to Kelly Services employees. Suffice it to say for the issue at hand that the asserted limiting effect of this language is not so compelling as to preclude arbitration.

**3.** If there are other legitimate issues involved, these two are most apparent.

B) The arbitrator shall have no power to add to, subtract from, or modify any provision of this agreement.

The defendant argues that its actions with regard to the use of Kelly Services' workers are wholly within an area of exclusive employer discretion referred to in the collective bargaining agreement as "management rights." Since any actions taken pursuant to these rights are specifically excluded from arbitration, the defendant argues that the grievances set forth by the plaintiff are not arbitrable. The Court is unwilling to accept this syllogism.

To begin with, the exclusionary language regarding management rights is not entirely clear since the definition of management rights itself is somewhat open-ended. Article V, Section 1 seeks to preserve for the employer "all managerial rights and functions not expressly limited by the provisions in [the] agreement ..." In the first paragraph of that section, a number of specific rights are reserved for the company. At the end of this litany of rights, however, is the glaring qualifier that these exclusive functions rest solely with the company so long as they are "not inconsistent with the other provisions of this agreement." It is the effect and scope of other provisions, specifically those pertaining to subcontractors and temporary employees, that require interpretation.[4]

This Court cannot find "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–683, 80 S.Ct. 1347, 1352–1353, 4 L.Ed.2d 1409 (1960). In addition, the Court finds that there is not "forceful evidence of a purpose to exclude [this] claim from arbitration," *id.*, 363 U.S. at 584–585, 80 S.Ct. at 1353–1354, particularly where the arbitration and exclusion clauses of the agreement read together are vague. The Court will find in favor of the plaintiff.

*Pre-trial Objections to Exhibits*

Plaintiff's objection to defendant's Exhibit B will be overruled since there was testimony at trial that the document was under the care, supervision and control of one of defendant's witnesses. The exhibit has a proper foundation.

The majority of defendant's objections have some force. The joint stipulation filed by the parties renders many of plaintiff's exhibits irrelevant since facts regarding the grievances are not in dispute although their legal basis is and will be a matter for resolution. Plaintiff's Exhibit Number One (the collective bargaining agreement in effect from May 1, 1981 to April 30, 1987) is somewhat relevant in that it shows that the pertinent contractual provisions that are relevant to the issue of arbitrability have not changed appreciably since 1981. This is relevant in that disputes, grievances and arbitration awards occurring during the earlier contract period are useful in determining certain patterns and practices of relevance to the present agreement. Since the standard of proof for a finding of non-arbitrability is very high, however, this exhibit had no practical effect on the Court's ruling as to arbitrability.

Plaintiff's Exhibit 23 (an arbitration decision involving subcontracting maintenance work) was not in the Court file. Since the Court believes that case clearly requires a finding of arbitrability, (the plaintiff's position), the absence of Exhibit 23 has not compromised the plaintiff's case in any way.

Accordingly,

IT IS HEREBY ORDERED the Court finds in favor of the plaintiff.

IT IS FURTHER ORDERED that defendant submit the underlying grievances to an arbitrator within fifteen (15) days of this order.

IT IS FURTHER ORDERED that plaintiff's objection to defendant's Exhibit B is OVERRULED.

---

**4.** For example, contrary to what the defendant argues, there *are* limitations on its right to employ subcontractors. An issue for the arbitrator will be whether these limitations should have prevented the company from using Kelly Services' workers under the circumstances presented.

648

IT IS FURTHER ORDERED that defendant's objections to plaintiff's proposed exhibits are GRANTED except as to Exhibit Numbers One and 23.

IT IS FINALLY ORDERED that defendant's objection to plaintiff's Exhibit Number 23 is DENIED as moot.